UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BOGDAN NICOLESCU, | ) | Cause No. 2:23-cv-00394-JRS-MKK |
| | ) | |
| Plaintiff, | ) | NICOLESCU'S MOTION FOR LEAVE TO |
| | ) | |
| v. | ) | FILE SUR REPLY, AND ENCLOSED |
| | ) | |
| DAVID BREWER or successor, | ) | OMNIBUS SUR REPLY TO DEFENDANT'S |
| | ) | |
| Defendant. | ) | #194 AND #195 REPLIES |

Plaintiff Bogdan Nicolescu, pro se, respectfully requests Leave to File

the enclosed Omnibus Sur Reply to Defendant's Replies under Dkt# 194 and #195,

on the ground that Defendant again mischaracterizes Nicolescu's contentions, and BECAUSE

for the first time on reply DEFENDANT seeks dismissal as a matter of law of the email claim.

SUR REPLY:   In a nutshell, Defendant will stop at nothing in order to mislead the

Court away from the Counter Terrorism Unit ("CTU")(an entity not located in the

Southern District of Indiana), and from the fact that the CTU always was and

continues to be necessarily involved in the handling of all of Nicolescu's

correspondence and of his access to TRULINCS e-mail, so long as Nicolescu

remains housed in a Communications Management Unit ("CMU").

That is, the CTU is required to "screen" all of the CMU inmates' mail.

Only after obtaining "clearance" from the CTU of that mail, is CMU staff allowed

to hand that mail over to the USPS (if outgoing) or to inmate (if incoming).

An "accusation" against the CMU thus necessarily implies an accusation

against the CTU too.  The CTU directs all CMU operations, and Nicolescu has

indeed so alleged. See Dkt# 192 at 1 (citing Complaint ¶¶ 27 and 19) and Id.

(citing Complaint at ¶ 28).  The inner workings of that process are not

regularly revealed to the inmate, so an inmate would not regularly know whether

the CMU itself is the cause of grievance, or whether the cause is the CTU.

Declarant Schmalensee's own actions acknowledge this fact. See p.4, infra.

In deciding a motion to dismiss, the Court accepts as true all factual

allegations and **draws all reasonable inferences in favor of Plaintiff.**

Facts most relevant to subject matter jurisdiction, but avoided by Defendant, are:

(a)    Evidence Defendant himself propounded establishes that on one occasion it was in fact the CTU who directed and indeed caused a 13-day delay of Nicolescu's legal mail,(which ultimately resulted in denial-of-access), and not the FCI Terre Haute CMU. See Dkt# 192 at 1 (quoting Dkt# 78-5 at 11).

The e-mail claim is perhaps less clear, but ultimately not different. Again, Nicolescu alleged that the CTU directs all the Warden's operations insofar as CMU inmates are concerned. This includes e-mail exclusions, and it also includes postal mail. See Dkt# 192 at 2 (quoting Complaint ¶ 28).

(b)    Defendant has thus far not introduced any evidence that suggests that any of the acts of the Warden or of the CMU staff at FCI Terre Haute were not in fact directed by the CTU.

I.    FALSE STATEMENTS AND MATERIAL OMISSIONS IN THE #194 REPLY
      IN SUPPORT OF #182 MOTION TO DISMISS.

(a)    Defendent contends that "Nicolescu asks  the Court to ignore the accusations he has made against CMU staff at FCI Terre Haute". Dkt# 194 at 1 (emphasis added).

Not true: Nicolescu never asked the Court to ignore those accusations.

As demonstrated supra, an allegation against the CMU necessarily implies an allegation against the CTU—the entity that directs the CMU's actions.

Nicolescu rather contended that (1) the CTU does direct the actions of the CMU staff; (2) on one occasion Defendant himself produced evidence that the CTU and not FCI Terre Haute caused a 13-day delay of Nicolescu's legal mail; and (3) no evidence exculpating the CTU from any of these acts exist on the record.

(b)    Defendant further contends that "[Nicolescu] admits that the former FCI Terre Haute Warden approved his exclusion from the system." Dkt# 194 at 1.

This is misleading because Defendant materially omits that Nicolescu also alleged that the Warden's actions were, in fact, directed by the CTU, and that

no evidence on the record contradicts that allegation.

(c)    Defendant further contends: "Nicolescu states that he has always contended that the BOP's [CTU] was at fault for allegedly denying him access to the courts. But that's not the case." Dkt# 194 at 2 (citing Dkt# 192 at 1). (emphasis added)

This is false and (intentionally) misleading: Defendant rests his theory on his observation that "Nicolescu ... often diferentiated [the CMU] from the CTU." Dkt# 194 at 2. Based on that Defendant concludes that Nicolescu did not in fact allege any facts against the CTU.

But Defendant's conclusion misstates the relationship between the CTU and the CMU.

As demonstrated supra, and indeed alleged in the Complaint ¶¶ 28, 27 and 19, the CTU directs all of the CMU's actions.

Defendant has not produced any evidence to the contrary.

That Nicolescu has made allegations against the CMU, in reality, implies that those allegations were necessarily directed at the CTU as well---again, the CTU directs CMU operations, and not the other way around.

However, the reverse is not necessarily true: An allegation against the CTU does not necessarily imply an allegation against its subordinate, the CMU, too.

Nicolescu referred to the CTU alone only when he had actual knowledge that the CTU (but not the CMU too) was at fault on such particular occasions.

In all other occasions, Nicolescu referred to the CMU, more generally, because he lacked such knowledge. But Nicolescu did not also allege that the CTU could not be at fault on such occasions.

When deciding a motion to dismiss the Court must draw all inferences in the favor of the Plaintff: All allegations against CMU are also against the CTU.

As demonstrated supra, and indeed alleged in the Complaint ¶¶ 28, 27, 19, delays of the handling of Nicolescu's mail by the CMU can be caused by delays

of its clearance by the CTU. The Court must make that inference.

Whereever Nicolescu alleged such interference by the CMU, the Court must thus infer that Nicolescu implicitly alleged that the CMU's interference could have been caused by the CTU's actions.

A.    Evidence of CTU Interference Already Exists
      (but evidence that the CTU was not at fault even on a singular
      occasion does not exist).

Here is an actual example:  On January 11, 2024 Nicolescu mailed a motion to reconsider to theSeventh Circuit.

Because a tracking label was affixed to the envelope, Nicolescu was able to determine that as of January 24th the CMU had still not mailed his letter out.

Nicolescu then filed a BP-8 administrative remedy.

BP-8 administrative remedies are nominally addressed to the Unit Manager, here, Declarant Schmalensee, then Unit Manager of the Communications Management Unit at FCI Terre Haute. Dkt# 194-2 ¶1.

Therein, Nicolescu contended "You are withholding my letter..." Dkt# 44-1, Atachment H, p.1 (BP8 regarding the Jan-11 letter).  "You", therefore, in this context meant the Unit Manager of the CMU, Declarant Schmalensee.

Schmalensee himself responded that "once it is cleared, we will [hand over Nicolescu's Jan-11 letter to the USPS]". Id. (emphasis added).

Schmalensee further added that the letter was "cleared 1/24/23 [sic]", Id., meaning that the Counter Terrorism Unit had "cleared" it only on January 24th.

Then, the CTU was, after all, responsible, not the CMU to whom Nicolescu nominally addressed that particular grievance.

Tellingly, CMU Unit Manager Schmalensee himself, clearly understood that that grievance, that was nominally addressed to him, was nonetheless ultimately complaining about the acts of the Counter Terrorism Unit.

Schmalensee responded that the CTU caused the delay.

Indeed, Declarant Schmalensee clearly understands that a complaint against the CMU, generally, implies a complaint against the CTU.

Evidence later submitted by Defendant indeed proves that the CTU was at fault for the delay—and not the CMU, per se. See Dkt# 192 at 1 (citing Dkt# 78-5 at 11).

It is only disingenuous that Defendant now draw the exact opposite—and false—conclusion. See Dkt# 194 at 2-3.

B.    System-Wide TRULINCS E-mail Exclusion.

Defendant further contends that "Nicolescu ... conclusory alleg[es] that his exclusion is 'system-wide'" Dkt# 194 at 3. (emphasis added).

This again mischaracterizes Nicolescu's submission: Nicolescu in fact produced evidence in support of that conclusion. See Nicolescu's Declaration in Support of the E-mail Claim, Dkt# 192-1.

Nicolescu also offered legitimate argument: Nicolescu alleged that the CTU directs the Wardens' "exclusion of inmates from the TRULINCS e-mail system." Dkt# 192 at 2 (citing Complaint ¶ 28). And argued that "[a]lthough the only notice Nicolescu had received regarding his exclusion was ostensibly signed by the Warden from FCI Terre Haute, that exclusion followed Nicolescu to FCI Cumberland too, from day one," Dkt# 192 at 2-3 (citing Complaint ¶ 44).

Indeed, Nicolescu's e-mail exclusion was already in place when he arrived at FCI Cumberland—despite having not received a new exclusion notice from the warden of the new facility.

That's resonably "system-wide."

The FCI Terre Haute Warden does not have authority to impose e-mail exclusions upon FCI Cumberland inmates.

Nicolescu did not receive any exclusion notice from the FCI Cumberland warden.

This is evidence that Nicolescu's email exclusion had all along been system-wide, or at least CMU-wide.

This only bolsters Nicolescu's allegation that the Warden's action--here the TRULINCS e-mail exclusion--had, in reality been directed by the Counter Terrorism Unit, exactly as alleged in the Complaint ¶ 28.

Then, this only bolsters the conclusion that subject matter jurisdiction still exists--the e-mail restriction had been directed by the CTU.

The CTU has never been and is not located in the Southern District of Indiana.

Defendant, for his part, brings no evidence against any of these allegations.

Defendant merely ignores these specific allegations.

Defendant just hopes the Court won't even read Nicolescu's response.

On this record, the Court must thus conclude that subject matter jurisdiction remains unaffected by Nicolescu's transfer.

Subject matter jurisdiction still exists, as it lies with the CTU.

## II.   MOTION TO DISMISS AS A MATTER OF LAW, THE E-MAIL CLAIM

For the first time in his reply. Defendant now argues for dismissal as a matter of law, of the e-mail claim. Dkt# 194 at 3-4.

That would properly be a motion under Rule 12(b)(6), not one based on lack of subject matter jurisdiction.

Defendant indeed argues that somehow the general controls the specific, that the general provision from the "BOP Program Statement 4500.12, 'Trust Fund/Deposit Fund Manual," Dkt# 194 at 3, that "'[t]he Warden shall prohibit or discontinue the operations of TRULINCS, or individual inmates' participation, wheneever it is determined to jeopardize the safety, security, or orderly operation of the correctional facility, or the protection of the public and staff" gives the Warden authority to ignore, Dkt# 194 at 3-4, the CMU-specific provision under the same Manual, PS 4500.12 § 14.9(a)(5): "Inmates confined in

Communications Management Units will have access to the public messaging service."

Defendant's argument is unavailing for 3 independent reasons:

a.    Even assuming, arguendo, that the Warden had the authority to exclude (not restrict) CMU inmates from the TRULINCS e-mail service, due to security concerns, Nicolescu had nontheless alleged that the exclusion was, in reality, imposed in retaliation to Plaintiff's engagement of "the news media through e-mail." Complaint ¶ 47. (albeit under the guise of security considerations). Then the claim cannot possibly be barred as a matter of law.  And, in any event, Defendant brings no other argument, and does not address Nicolescu's specific retaliation claim.

b.    Defendant's reliance on the aforementioned general provision is misplaced.  As a matter of law, the Warden, in fact, lacks authority to "exclude" CMU inmates from TRULINCS e-mail participation. BOP PS 4500.12 § 14.9(a)(5).  CMU inmates are exempted from such "exclusions." Id. § 14.5(a).

It is true that TRULINCS e-mail is a "privilege," and nothing here contradicts that assertion.  The Warden may still "limit" that privilege, but only as punishment for disciplinary infractions, or due to investigation. Id. § 14.9(b).

But Nicolescu was given no disciplinary sanction.  And Nicolescu was not placed under investigation.  Nicolescu was then "excluded" from TRULINCS e-mail, but the Warden plainly lacked the authority to do so.  Not only is Id. § 14.9(a)(5) the more specific provision that applies here, but PS 4500.12 expressly sets forth the Warden's authority: The Warden's authority to impose "restrictions" and "exclu[sions] from [TRULINCS] participation or individual services as part of classification procedure (see Section 14.9)", Id., § 14.2, "AUTHORITY," is governed by ID. §.14.9(a).  Nicolescu is exempted from such exclusion. Id. § 14.9(a)(5).

c.    Defendant only raised this issue in a reply to a motion to dismiss for subject matter jurisdiction.

However, Nicolescu requests that the Court consider it as a general motion to dismiss, and consider it together with the instant sur reply, and deny Defendat's motion to dismiss.

This will serve judicial economy because it will bar Defendant from raising any further motion to dismiss the e-mail claim.

Last, the PS 4500.12 § 14.9(a)(5) exemption from TRULINCS e-mail exlcusion is indeed reasonable: It is impossible for CMU inmates to "jeopardize the safety, security, or orderly operation of the correctional facility" THROUGH E-MAIL because all CMU e-mails require affirmative approval from the CTU before being actually sent to their recipients.  The CTU would not approve such emails in the first place. Then, exclusions of CMU inmates from TRULINCS e-mail are indeed superfluous.

III.  DISCREPANCY IN DEFENDANT'S #195 REPLY IN SUPPORT OF TRANSFER OF CASE.

Nicolescu joins Defendant's suggestion that the Court only rule on the motion to transfer and leave the motion to dismiss for the transferee court. See Dkt# 195 at 1-2.

Nicolescu hereby consents to transfer to the District of Maryland as well.

But Nicolescu believes that the Counter Terrorism Unit,is located in a different district.  Although Defendant acknowledges that Nicoelscu requested transfer to the district where the CTU is located, Dkt# 195 at 1, nonetheless concludes that the case be transfered "to the District of Maryland, where Nicolecu is currently confined." Dkt# 195 at 2. (emphasis added).

Up until now, Nicolescu had not actually consented to that district. But Nicolescu hereby consents to the District of Maryland too.

WHEREFORE, the undersigned respectfully requests that the Dkt# 182 motion to dismiss be denied, that Dkt# 194 at 3-4 be construed as a general motion to

8 of 9

dismiss and be denied, and that transfer to District of Maryland, District of Columbia, or any other district the Court finds appropriate be granted.

Dated:   September 17, 2025

Respectfully submitted,

Bogdan Nicolescu, pro se
Inmate# 64505-060
PO BOX 1000
Cumberland, MD 21501

## DECLARATION OF INMATE FILING AND CERTIFICATE OF SERVICE

I AM AN INMATE CONFINED in an institution.  Today, September 17, 2025, I am depositing the foregoing in the institution's internal mail system. First-class postage is being prepaid by me.

I certify that on September 17, 2025, I have mailed a copy of the foregoing by first-class U.S. Mail, postage prepaid and properly addressed to :

Assistant U.S. Attorney
10 W Market St
Suite 2100
Indianapolis, IN 46204

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 17th day of September, 2025.

Bogdan Nicolescu, pro se

NAME: BOGDAN NICOLESCU
NUMBER: 64505-060
Federal Correctional Institution
P.O. Box 1000

CUMBERLAND, MD 21501

SENT ON
SEP-17, 2025
CONTENTS:
SUR-REPLY: 9 pp.

FILED

SEP 22 2025

U.S. DISTRICT COURT
INDIANAPOLIS, INDIANA

BALTIMORE MD
18 SEP 2025

⇔64505-060⇔
District Court U.S
105 U.S. Courthouse
46 E OHIO ST
Indianapolis, IN 46204
United States

46204-191930

25-64505060-0917-M0-2